Submitted on briefs November 26, 1929; affirmed January 28, 1930

## EDWARDS v. TOBIN ET AL.

(284 P. 562)

*C. D. & E. C. Latourette* of Oregon City for plaintiff.

*J. E. Hedges* of Oregon City for defendants Tobin.

*Schuebel, Beattie & Miller* of Oregon City for defendant Pulp & Paper Company.

BELT, J. This is a suit to compel specific performance of a covenant to renew a lease. On July 11, 1923, J. J. Tobin and his wife leased the Electric hotel and annex, located in Oregon City, to plaintiff Deo Edwards and his cotenant Elmer West, for a period of five years at a rental of $175 per month. The renewal clause out of which this controversy grows, provides:

"It is further mutually agreed by and between the parties hereto that the lessees shall have an option to renew this lease at the expiration thereof, for a period of five years, subject to the conditions herein on the same terms as expressed in the within instrument with the exception of the rate or rental, which shall be determined at said time of renewal between the parties; said rental to be a reasonable rental under the then existing conditions."

On January 3, 1924, West sold and assigned to the plaintiff his interest in this lease. On the 10th day of January, 1928, Tobin and his wife, for a consideration of $15,000, conveyed by deed to the defendant Hawley Pulp & Paper Co. the property on which the annex building was located. Before the lease expired the Hawley Pulp & Paper Co. notified the plaintiff that it had purchased the Electric hotel and annex and that from and after the 15th day of July, 1928, the date of the expiration of the lease, his occupancy would be from month to month. Plaintiff thereupon notified each of the defendants that he proposed to exercise his option under the lease for a renewal period of five years. Upon denial of his right to such renewal of the lease, plaintiff instituted this suit.

The trial court held that plaintiff was entitled to specific performance of the covenant in question and fixed the reasonable rental of the property at the sum of $200 per month. It was further decreed that the rental should be apportioned between the defendants by requiring the tenant to pay $160 per month to Tobin and his wife and $40 per month to the Hawley Pulp & Paper Co.

Defendants' appeal from this decree is based upon two grounds: (1) that the renewal covenant relative to rental was so indefinite, vague and uncertain that equity will not decree specific performance; (2) that, since the lease was executed by plaintiff and his cotenant West, the option for a renewal must, in any event, be exercised by both and that plaintiff alone has no rights thereunder.

Plaintiff also appeals asserting that the court erred in determining the reasonable rental to be $200 per month instead of $175.

 It is fundamental that equity will not decree specific performance of a contract which is vague, indefinite and uncertain, nor will it make a new contract for the parties. It may, however, in the furtherance of justice, compel a party to do that which in equity ought to have been done and which was in contemplation of the parties as expressed in their contract, assuming there is no adequate remedy at law. In the instant case, the plaintiff occupied the premises for the full term of the original lease and faithfully performed his part under its terms. When plaintiff and his cotenant engaged in the hotel business they invested approximately $10,000 in furniture, equipment and improvements. The furniture was purchased from the defendant Tobin. The business was, no doubt, carried on in

contemplation of the right of renewal of the lease. Since it was impossible to fortell the future and the business conditions which might exist at the expiration of the lease, the parties thereto deemed it advisable to provide in the renewal clause that the rent for the additional five-year term should be determined by them on a fair, equitable, and reasonable·basis. That such was the intention of the parties to this contract there can be no doubt. Neither is there any question that the right of renewal was put in the lease for the benefit of the lessee and that it was the essence of his contract. It will be observed that the new lease was to be subject to all the terms and conditions of the original agreement, the only exception being the amount of rental which was to be fixed by agreement of the parties. The method of determining the rent pertains more to form than to substance. It was not the essence of the contract but was merely incidental and ancillary thereto: *Houston v. Barnett,* 90 Or. 94 (175 P. 619). Under such circumstances will equity permit the landlord arbitrarily and capriciously, in violation of the plain import of his agreement, to refuse to fix a reasonable rental? Will he be heard to say, "My agreement is too vague and indefinite to enforce"? Common sense and justice dictate the answer.

■■ There are many cases where specific performance has been decreed when arbiters provided for in a renewal clause failed to agree on what was a reasonable rental: *Kaufmann v. Liggett,* 209 Pa. 87 (58 Atl. 129, 103 Am. St. Rep. 988, 67 L. R. A. 353). What logical reason is there for equity to refuse to act when the parties themselves fail to agree on the rental? It is not a question of making a new contract for the parties, but it is rather one of compelling the doing of that

which was plainly contemplated. If there be any uncertainty or ambiguity in the lease—and we see none—it should be construed most strongly against the landlord, or the party granting it. The vital question is: Is the clause in the lease providing for renewal too indefinite and uncertain to enforce? We think it is not.

We are not unmindful that many courts of high repute have held that a renewal covenant in a lease which leaves the rental to be determined by agreement of the parties is void for uncertainty and therefore deny specific performance. See cases in note following *Young v. Nelson,* a Washington case reported in 30 A. L. R. 568. It must be conceded that textbooks quite generally support this conclusion: Tiffany on Landlord & Tenant, § 220; Taylor's Landlord & Tenant (9th Ed.), § 333; Underhill on Landlord & Tenant, § 805. With all deference to these authorities, we think the more just and equitable rule is stated in *Young v. Nelson,* 121 Wash. 285 (209 P. 515, 30 A. L. R. 568); *Anderson v. Frye & Bruhn, Inc.,* 69 Wash. 89 (124 P. 499); *Bechmann et al. v. Taylor,* 80 Colo. 68 (249 P. 262); *Hall v. Weatherford,* 32 Ariz. 370 (259 P. 282, 56 A. L. R. 903); *Arnot v. Alexander,* 44 Mo. 25 (100 Am. Dec. 252); *Bird v. Couchois,* 214 Mich. 607 (183 N. W. 36).

In *Bird v. Couchois,* supra, the renewal clause was, "The last three years of this lease the rent to be raised. Amount to be fixed by parties of the first part." The landlord fixed a rental of $2,500 per year. The court held that $1,000 per year was a reasonable rental and decreed specific performance of the contract to renew the lease. True, the court said that it was "not a question of renewing a lease or creating a new or similar right, but it is a question of refixing the rentals of an existing lease." The distinction made by many courts

between a renewal and an extension of a lease, in our opinion, is immaterial so far as the granting or refusing of equitable relief is concerned. The opinion of the court concluded with this pertinent observation:

"If, then, a reasonable rental was contemplated by the lease, it was defendant's duty to fix a reasonable rent, and the question arises, Have they done so?"

*Slade v. City of Lexington*, 141 Ky. 214 (132 S. W. 404, 32 L. R. A. (N.S.) 201), is an analogous case. A water company contracted to supply a municipality with water. The contract contained a renewal clause that the city "shall renew the contract with said company for 25 years longer, upon terms as mutually agreed upon at that time." It was contended there, as here, that an agreement to renew a contract upon terms to be agreed upon by the parties is a nullity. The court recognized the general rule that a contract to make at a certain time an agreement as the parties may then agree upon is invalid, but stated there was a well settled exception to this rule. The reasoning of the court may well be applied to the instant case. It was there said:

"The parties evidently meant that the contract between the city and the water company should be carried out upon the terms agreed on for 25 years, but it was contemplated that the city would grow, and what were reasonable terms then might not be reasonable terms in 25 years, under changed conditions; and so, they provided that the contract should be renewed, but the terms of the renewal were to be agreed on at the end of the 25 years. The water company has invested a large sum of money upon the faith of its contract rights here, and the case is not substantially different from that of a tenant who has built an extensive improvement upon a piece of land under a contract that his lease is to be renewed. A court of equity will not

allow injustice to be done or one to reap where another has sowed, upon the faith of a contract like this. At the end of 25 years the water company was as much bound to renew the contract as the city was bound.''

In Thompson on Real Property, § 1230, it is said:

''However, there seems to be a doctrine in the later cases that equity will, to prevent a failure of justice, apply its own remedies, and thus, where the substantial terms of a contract are agreed upon, arrive approximately at the minor details and then specifically enforce the contract. In the case of a covenant of this kind, it is obvious that it is not of the essence of the contract that the valuation should be made by appraisers rather than by a court of equity. That is an immaterial detail, and a mode as effectual and fair can be found.''

We see no merit in the contention that the plaintiff could not alone exercise his option for a renewal of the lease. The covenant for renewal is one which runs with the land: 7 R. C. L. 1106; Tiffany on Landlord & Tenant, section 1548; Jones on Landlord & Tenant, section 455. In the instant case there were no restrictions against assignment. We are not dealing with a case wherein one of several lessees undertook to exercise such an option where no assignment of the interests of the other cotenants had been made. It was within the power of the landlord so to contract that the right of renewal was personal, but, if no restriction was made in reference thereto, such right may pass by assignment: 35 C. J. 1013; Taylor's Landlord & Tenant (8th Ed.), section 332; Tiffany on Landlord & Tenant, section 230; Underhill on Landlord & Tenant, section 815.

Plaintiff, cross-appellant, objects to the finding of the court that $200 per month is a reasonable rental. We have examined the evidence relative to that issue

and have concluded not to change the rental as fixed by the lower court. We think the trial judge was in a better position to determine the rental value of property in Oregon City than this court and, while its findings are not conclusive, they are entitled to great weight.

The decree of the lower court is affirmed.

AFFIRMED.