15843

RAINWATER v. HOBEIKA

(38 S. E. (2d), 495)

434

*Messrs. McEachin & Townsend,* of Florence, for Appellant,

*Messrs. Bridges & Blackwell,* of Florence, for Respondent,

May 20, 1946.

PER CURIAM : This is an appeal from an order of Honorable L. D. Lide, Resident Judge of the Twelfth Circuit, which will be reported. The Court is satisfied, from a careful study of the questions presented, that Judge Lide correctly disposed of all issues involved in the case. For the reasons assigned by him in his well-considered order, the judgment below is affirmed. We desire to add only a few brief observations.

After the original lease was executed but before the commencement of the term, the tenant discovered that it would be necessary to expend for repairs and remodeling twice as much as originally contemplated and concluded that such an amount could not be reasonably absorbed during the term of five years designated in the lease. This fact was made known to the landlord who then agreed to give the tenant an option to extend the lease for a period of an additional five years. On the faith of this renewal covenant, the tenant expended approximately $3,000.00 for repairs and remodeling and approximately $12,000.00 for equipment and fixtures. These fixtures were specially made for the particular building leased and if removed therefrom, would be of little value. All of the foregoing expenditures were made with the knowledge of the landlord. It is clear that the parties intended that the covenant for renewal should be considered as a part of the original lease and that the two instruments should constitute a single agreement. Months before the original term expired, the landlord, without notice to the tenant and without any inquiry as to whether he desired to exercise the option given him to extend the lease, deliberately undertook to lease the premises to another, thereby strongly indicating that he did not intend to bargain in good faith with the tenant as to the rent to be paid for the additional term.

We are, therefore, not called upon to determine whether an executory lease which leaves the rent to be fixed by agreement is unenforceable and void for uncertainty and indefiniteness. Here the tenant has so far performed that he will suffer a serious financial loss unless the Court enforces the

option given to him for an extension of the lease. The covenant for renewal was to the tenant a very important feature of the agreement. He was induced thereby to spend approximately $15,000.00 in preparing the building for occupancy and the business was carried on in contemplation of the right of renewal of the lease. Under these circumstances, will the landlord be heard to say, "My agreement is too vague and indefinite to enforce"? As stated in *Edwards v. Tobin*, .. . Ore., .. , 284, P. 562, 68 A. L. R., 152, referred to in the order of Judge Lide, "Common sense and justice dictate the answer".

MESSRS. CHIEF JUSTICE BAKER and ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.

Order of Judge Lide:

This is an ejectment proceeding under Section 8813, Code 1942, instituted by the plaintiff above named as landlord against the defendant above named as tenant on December 1, 1945, in the court of B. H. Maynard, Esq., one of the magistrates for Florence County. A notice to show cause was duly issued by the magistrate directed to the defendant requiring him to show cause why he should not be ejected from certain premises, stating that his lease therefor had "expired"; the premises in question being situate on the northeast corner of Dargan and Evans Streets in the City of Florence. The case came on to be tried before the magistrate and a jury upon the return day, to wit, December 5, 1945, and the respective parties were represented by competent counsel.

Counsel for the defendant presented to the court and read at the hearing an elaborate return in his behalf of the rule to show cause, attached to which as a part thereof are the basic documents concerning the relationship between the parties. Thereupon counsel for the plaintiff interposed a demurrer to the return and moved that the same be rejected and held insufficient, and for judgment on the pleadings. After hearing argument of counsel pro and con the magistrate directed a verdict in favor of the plaintiff for the possession of the premises in question. It will be observed that

no evidence whatsoever was adduced at the trial and that the judgment of the magistrate was based solely upon the pleadings. From the judgment of the magistrate the defendant duly appealed to this court, and the appeal was heard by me at my chambers at Marion on December 15, 1945. After argument of counsel for the respective parties the matter was taken under advisement.

From the foregoing statement it is clear that we must first review the defendant's return in order to understand the issues before the court for determination. And it appears from the original lease attached to the return and dated October 24, 1940, that I. S. Rainwater, the landlord, granted and leased unto N. E. Hobeika, the tenant, the property in question, described as "the ground floor of the building situate on the northeast corner of Dargan and Evans Streets, in the City of Florence, formerly occupied by Stanley Drug Company, fronting on Evans Street 60 feet and on Dargan Street 25 feet". The term of the lease is stated to be five years from December 1, 1940, up to and including November 30, 1945, and the amount of the rent to be paid is set forth in the lease. The lease is in the usual form and is executed by both of the parties, and is duly probated.

Some time after the lease was executed, to wit, on November 22, 1940, Mr. Rainwater, the landlord, executed and delivered to Mr. Hobeika, the tenant, an *addendum* to the lease of which the following is a copy:

Florence, South Carolina.
Nov. 22nd, 1940.

It is further understood and agreed that the lessor is to have an option for five additional years at the expiration of the within lease at a price agreed upon at that time.

This is to be attached to the original lease and becomes a part of the lease.

I. S. Rainwater

Witnesses: Mrs. Clif M. Shaw, Nellie Odom.

(It will be observed from a casual reading of the foregoing *addendum* to the lease that there is a manifest clerical or typographical error therein, that the word "lessor" was

obviously intended to be "lessee", and should be so treated. Indeed, counsel for the plaintiff evidently so regarded it, and hence no reference was made to this matter in argument.)

As directed in the *addendum* the same was attached to the original lease as a part thereof, and the lease including the same was duly recorded in the clerk's office for Florence County, on November 25, 1940, in Deed Book 82, at page 95.

It appears from the return that the option granted to the tenant by the landlord in and by the *addendum* to the lease as aforesaid was executed because of the circumstances that the lease was procured by the tenant for the purpose of enabling him to operate a cafe or restaurant in the building, and that considerable remodelling thereof was necessary to fit it for this purpose (such remodelling to be done under the agreement at the expense of the tenant), and that it developed as the work progressed that such remodelling was so extensive that the cost would be not less than $3,000.00 or about twice what had previously been contemplated. And it is further alleged that upon learning of the tenant's plan to make such additional improvements to the property the landlord agreed then and there to give to the tenant the exclusive privilege of extending the lease at the will of the tenant for five additional years; and pursuant thereto executed the option hereinabove quoted. And it is also alleged that the tenant completed the remodelling of the building at his expense in excess of $3,000.00; and that he also purchased expensive equipment and fixtures at a cost of approximately $12,000.00; and that these fixtures were especially made for the particular building and that if they were now removed therefrom would have a diminished value not in excess of $1,500.00. The return further sets forth in substance that the option granted was relied on by the tenant and was *essential* for his protection by reason of these expenditures.

So far as the record before the court shows the relation between the parties as landlord and tenant appears to have

been quite satisfactory until the occurrence of the following rather recent events.

On August 21, 1945, Mr. Rainwater wrote a letter to Mr. Hobeika of which the following is a copy:

Florence, South Carolina,<br>August 21st, 1945.

Mr. N. E. Hobeika,
Florence, S. C.
Dear Sir:

As it is only one hundred days before your lease expires and in as much as you have not intimated that you would like to renew this is to notify you that the place you now have leased as the B & G Cafe stand is leased to another party and they have paid rent for December and I will ask you to please accept this as your official notice to be vacated by the first of December, 1945.

Very respt.                     I. S. Rainwater.

The statement made in this letter that the tenant had not intimated that he would like to renew does not seem to be at all pertinent for the reason that there was ample time in which the tenant might exercise his option to extend the original lease at its expiration. But what is even more surprising is that the letter manifestly shows that Mr. Rainwater did not consider himself bound by the instrument he had executed as a part of the original lease granting the option of extension, but on the contrary, had definitely repudiated the same, for he stated that the property "is leased to another party and they have paid rent for December".

Subsequent to the receipt of this letter the tenant retained counsel, who duly gave specific notice to the landlord by letter dated October 12, 1945, that the tenant elected to renew the lease for five additional years in accordance with the option executed to him as aforesaid. The letter further stated that the tenant and his attorney were prepared to go into conference with the landlord at such time as would be mutually convenient with the view of discussing and arriving at a proper monthly rental for the use of the property begin-

ning with the expiration of the "present lease". A copy of this letter is attached to the return as a part thereof.

There are two other letters, copies of which are attached to the return, written by the attorney or attorneys for the tenant, and it appears from these letters, and from the allegations of the return relating to the conference which was held as suggested in the first letter above mentioned, that the result was that the parties were unable to reach an agreement as to the amount of the rent to be paid during the period of extension; all of which will fully appear by reference to the return.

It is thus apparent that the fundamental question which was before Magistrate Maynard, and is now by appeal before this court, is: Has the lease expired? Counsel for plaintiff as landlord contend that it has, upon the ground that the renewal provision partakes of the nature of an option, and that there was no consideration for this option, and that even if there were, the same is ineffectual, null and void, for uncertainty and indefiniteness, in that, the renewal rental was to be agreed upon by the parties. Counsel for defendant as tenant, however, contends that there was valuable consideration for the option, and that the same is valid and binding, for by its terms the lease was to be extended for five additional years, necessarily carrying with it the original covenants and stipulations of the lease, save only as to the rental, and that in the absence of an agreement by the parties as to the amount of such rental, the same would be fixed by the court in accordance with what would be reasonable under existing conditions at the time of the renewal.

After mature reflection upon the record before the court and rather intensive study of the available authorities, I am fully persuaded that the lease should not be held to have expired and that the magistrate was in error in so ruling and holding. Certainly if the contention of counsel for the plaintiff should be held to be correct the intention of the parties would be entirely defeated and the grant made by the landlord completely nullified.

With reference to the matter of consideration, it is quite clear from the allegations of the return that there was ample valuable consideration. It is true that the *addendum* was not executed until after the execution of the original lease, but it was executed *before* the term thereof commenced, and the landlord himself therein directed that the same be attached to the original lease and become a part thereof, and it was so treated by both parties. I am therefore of opinion that the landlord would be estopped now to say that it is without consideration because it was not actually embodied in the original lease.

Referring to the question of whether the option as a matter of law could be deemed valid and enforceable, upon the ground that the renewal rental was to be fixed by future agreement between the parties, and no such agreement has been had; it is quite true that it is not the function of the court to make contracts between parties, but it is the court's duty so to construe their written agreements as to effectuate the intention, to the end that justice may be done. Acting upon this principle our own Supreme Court has in many cases applied the *rule of reason,* and has applied it in the construction of deeds and contracts relating to real estate. One class of these cases is that relating to timber deeds, holding that the law would imply that the commencement of the cutting and removal of the timber conveyed should be within a reasonable time. See *Flagler v. Atlantic Coast Lumber Corporation,* 89 S. C., 328, and the numerous other cases following the same.

We need not stop to consider the *quantum meruit* cases in which the court determines reasonable compensation for services rendered in the absence of an express contract fixing the amount to be paid, for the authorities are clear that a like principle governs with reference to the relationship of landlord and tenant itself. A case directly in point to that effect is that of *Holliday v. Pegram,* 101 S. C., 378, 85 S. E., 908, wherein the court held that where all the terms of a contract of rental are agreed upon, except the rent, the landlord would be entitled to recover a reasonable rental

(quoting) "on *quantum meruit*—a contract implied by the law".

The foregoing case is in precise accordance with the earlier cases, including the case of *Terminal Co. v. Railroad Co.,* 52 S. C., 1, 21, in which the court says:

"If the relation of landlord and tenant existed between the plaintiff and the defendant, the law would imply an agreement to pay a reasonable compensation for the use of the property, in the absence of an express agreement to that effect. A. & E. Enc., Vol. 12, pages 660 and 661; *Ford v. Caldwell,* 3 Hill, 248; *Ryan v. Marsh,* 2 N. & McC., 157 A. & E. Enc., Vol. 27, page 908."

The cases above cited may not be deemed to be *precisely* in point here, but I think the present case clearly comes within the general rules therein laid down. Certainly I find nothing in our own decisions invalidating the option in question on the ground that it is too indefinite and uncertain. It is true that in the case of *Anderson v. Hall,* 155 S. C., 320, 152 S. E., 521, our Supreme Court held that a contract for a lease for a six-year term with the stipulation that in case the lessee should want to rent or lease the property longer than the six years specified, the lessor should choose one man and the lessee another, and that these two should choose a third man to fix the price to be paid per month in the future, was too indefinite and uncertain to be enforceable as a contract for the extension or renewal of the lease. But it will be observed that the court points out that the contract does not specifically give the lessee the right to an extension or renewal for any fixed period at the conclusion of six years, and that from the language used the intention of the parties as to what extension or renewal was contemplated could not be determined—there being nothing whatever to show whether the extension was for one year or for what period. The difference between that case and the case at bar is too manifest to require discussion.

The brief of counsel for the plaintiff refers to the general principle that the renewal privilege being in the nature of an option, unilateral in character binding the owner of the

property without any corresponding obligation on the other party, the same is subject to strict construction as to the exercise thereof, time being of the essence, that is to say, that the tenant must give timely notice of his election to renew and the same must indicate the unconditional and unqualified determination of the lessee to exercise his option, as was held in the case of *Pope v. Goethe,* 175 S. C., 394, 179 S. E., 319. However, it is quite clear from the writings attached to the defendant's return that such notice was duly and timely given by him.

. . The plaintiff further relies, as shown in the brief of his counsel, upon the Georgia case of *Candler v. Smyth,* 147 S. E., 552, and the West Virginia case of *Salem Lodge v. Smith,* 120 S. E., 895. The Georgia case holds that a provision in a lease for an extension, not stating price or terms, but contemplating a new agreement, would not be enforceable; and the West Virginia case holds that a renewal clause in a lease must be certain and definite in its terms, both as to the time the lease is to extend and the rent to be paid. While each of these two cases is plainly distinguishable in some respects from the case at bar, it is quite true that there is a considerable difference of opinion in the cases from other states upon the point under discussion. Indeed, it is said that in a majority of the states that have passed upon the question it is held that a contract for extension or renewal of a lease where the amount of the rent is to be agreed upon is unenforceable, but the courts of a number of other states have held directly to the contrary. Even if we assume that the *numerical* weight of authority is as indicated, I am convinced that the weight of *reason* is quite the reverse. And it should also be observed that the courts of many states, including our own, have not yet had occasion to pass upon the *identical* point involved.

The authorities pro and con, or at least the greater number of them, will be found in the annotations contained in 30 A. L. R., 572, and 68 A. L. R., 157. I shall, of course, not attempt to review all of these cases, but I have selected three of the leading cases on the subject from which I will quote at some length, to the end that the reasoning upon

which the decisions are based may fully appear. I     . :
of these cases to be considered is the Washington ca     f
*Young v. Nelson*, 121 Wash., 285, 209 Pac., 515, 30  ¸  ₁
R., 568, in which it was held that a contract to renew a,¿c  ·₁
"at such rental as may be agreed upon" at its ter₁  ·ʲᵣ ..üï
may be specifically enforced, since the court may determine
what rental would be reason̟able. I quote the following from
the opinion of the Washington Supreme Court:

"In such a case as this we consider the agreement for re-
newal one for the benefit of the lessee; otherwise it would
not have been included in the lease. It may be assumed that
the owner may always find a tenant for his premises, and
therefore, such a provision is not particularly for his benefit.
The tenant is not always in such state, and often desires such
a provision in his lease. Evidently, therefore, it was intended
for the benefit of the lessee, and may be supposed to have
formed an inducement to the original letting. *Arnot v. Alex-
ander*, 44 Mo., 25, 100 Am. Dec., 252.

"Manifestly, therefore, there should be some method
whereby the lessee may enforce the contract for his benefit.
If the lessor refuse to renew upon a reasonable rental, may
he thereby prevent an agreement between himself and the
lessee? The lessee might presume, when the contract was en-
tered into, that the lessor would be reasonable and would
fix a reasonable rental for the extended term, and renew the
contract as provided upon such reasonable rental. In con-
formity with the terms of the contract he notifies the lessor
that he is ready to renew for the extended term upon what
he states to be a reasonable rental. The landlord refuses this
rental, refuses to renew the lease, and demands a rental
which the lessee asserts to be unreasonable. In such a case
we do not believe that the lessor would be allowed to main-
tain an action for eviction or possession against the lessee,
claiming the right of possession for the extended term and
offering a reasonable rental."

In the well-considered Arizona case of *Hall v. Weather-
ford*, 259 Pac., 282, 56 A. L. R., 903, it was held that a
provision for renewal in a lease is not invalid because the

rental is to be fixed by agreement of the parties, since upon failure of the parties to agree the amount will be fixed by the Court at what is reasonable. And I quote the following rather lengthy excerpt from the opinion of the Arizona Supreme Court:

"There is a decided conflict in the authorities as to the effect of a renewal clause where the rent is to be fixed by agreement. Perhaps the greater number of states hold such a clause to be void for uncertainty. *Keating v. Michael,* 154 Ark., 267, 242 S. W., 563; *Sammis v. Huntington,* 104 Misc., 7, 171 N. Y. Supp., 965; *Sterenberg v. Beach,* 219 Ill. App., 68. On the other hand, there is excellent authority to the contrary. *Young v. Nelson,* 121 Wash., 285, 30 A. L. R., 568, 209 Pac., 515; *Arnot v. Alexander,* 44 Mo., 25, 100 Am. Dec., 252.

"The first line of cases is based on the theory that the courts cannot make a contract for the parties, and cannot compel them to agree upon one, and that since such is the case a provision depending upon their voluntary agreement for its effectiveness is void, *ab initio.* The reasoning on the other side is well stated in *Young v. Nelson, supra,* as follows: 'In such a case as this we consider the agreement for renewal one for the benefit of the lessee, otherwise it would not have been included in the lease. It may be assumed that the owner may always find a tenant for his premises, and therefore, such a provision is not particularly for his benefit. The tenant is not always in such a state, and often desires such a provision in his lease. Evidently, therefore, it was intended for the benefit of the lessee and may be supposed to have formed an inducement to the original letting. * * * Manifestly, therefore, there should be some method whereby the lessee may enforce the contract for his benefit'.

"And it was held that an agreement for renewal would not be considered void because the amount of rental for the renewal period was left to the agreement of both parties, but that a reasonable renewal value under the circumstances of the case was implied by the contract, and that, if the parties

could not agree upon what was reasonable, the amount would be fixed by the court.

"We are of the opinion that the reasoning of the case last quoted is the most in accord with common sense and justice. Written instruments should be construed so as, if possible, to give effect to every clause thereof, rather than to hold any of them void. As was well stated, options to renew granted to the lessee are obviously for his benefit, and it is presumed are part of the consideration which induced him to execute the lease. If we are to hold such clauses as being absolutely void, we are taking from the lessee without remuneration something for which he has paid. We should not so construe contracts if it is possible to avoid it. We hold that a renewal clause leaving the rent to be fixed by agreement implies a reasonable figure, and is enforceable, and therefore valid."

The Oregon Supreme Court (*en banc*) in the case of *Edwards v. Tobin*, 284 Pac., 562, 68 A. L. R., 152, made a like ruling to the effect that a provision in a lease giving the lessee an option to renew for a stated term, subject to all the terms and conditions of the original agreement except as to the amount of the rental, is not too vague and indefinite to admit of decreeing specific performance because the amount of rental is to be determined by the parties at the time of renewal as being what is reasonable under existing conditions. I quote the following from the Court's opinion:

"There are many cases where specific performance has been decreed when arbiters provided for in a renewal clause failed to agree on what a reasonable rental. *Hufman v. Liggett,* 209 Pa., 87, 67 L. R. A., 353, 103 Am. St. Rep., 988, 58 Atl., 129. What logical reason is there for equity to refuse to act when the parties themselves fail to agree on the rental? It is not a question of making a new contract for the parties, but it is rather one of compelling the doing of that which was plainly contemplated. If there be any uncertainty or ambiguity in the lease, and we see none, it should be construed most strongly against the landlord or the party granting it. The vital question is, Is the clause in the lease pro-

viding for renewal too indefinite and uncertain to enforce? We think it is not.

"We are not unmindful that many courts of high repute have held that a renewal covenant in a lease which leaves the rental to be determined by agreement of the parties is void for uncertainty and therefore deny specific performance. See cases in note following *Young v. Nelson,* a Washington case reported in 30 A. L. R., 568. It must be conceded that textbooks quite generally support this conclusion. Tiffany, Land. & T., Sec. 220; Taylor, Land. & T., 9th Ed., Sec. 333; Underhill, Land. & T., Sec. 805. With all deference to these authorities, we think the more just and equitable rule is stated in *Young v. Nelson,* 121 Wash., 285, 30 A. L. R., 568, 209 Pac., 515; *Anderson v. Frye & Bruhn,* 69 Wash., 89, 124 Pac., 499; *Bechmann v. Taylor,* 80 Colo., 68, 249 Pac., 262; *Hall v. Weatherford,* 32 Ariz., 370, 56 A. L. R., 903, 259 Pac., 282; *Arnot v. Alexander,* 44 Mo., 25, 100 Am. Dec., 252; *Bird v. Couchois,* 214 Mich., 607, 183 N. W., 36, 37."

Having determined, as I have already indicated, that the lease in question has not expired, the judgment of the magistrate should be reversed. And in this connection I quote the following clear statement from the record giving his views on the matter:

"This lease expired on November 30th or December 1st, and no agreement has been reached between the landlord and the tenant and I will have to direct a verdict in favor of the landlord that he shall have possession of the premises in question.

"To say the least, this is highly technical and there is no contract for the reason that Mr. Rainwater and Mr. Hobeika refused, or failed to come to an agreement and that is a condition over which I have no control."

The magistrate also stated that there was nothing to submit to the jury, and that he as magistrate (quoting) "certainly could not say what a reasonable rent would be". The magistrate was right, I think, in his opinion that the matter of what would be a reasonable rent could not be determined by him or by a jury in his court. Nor can this court,

upon appeal from a magistrate, determine the question. However, it can and should be in due course determined in and by a court of competent jurisdiction.

It will be recalled, as hereinbefore stated, that no evidence whatsoever was adduced before the magistrate and that his ruling was made solely upon a motion for judgment on the pleadings. And in this connection I quote the following from the statement made by one of counsel for the plaintiff in the presentation of his views of the law to the magistrate:

"The question is, has his lease expired? The answer is found in the instrument. It expired on December 1st unless at that time a new agreement was made at an agreed price. Now, I urge on the court the consideration that no matter how much testimony they introduce in this case, within the limits of the return, they have made, when all of the testimony is in the material fact remains, there was no price agreed upon for the extension of this lease. Now, that is so obviously the logic and the law of the situation it seems to me it would be a gross waste of time to go into the taking of the testimony, which we for the purposes of this motion are admitting they will produce and are admitting, for the purposes of this motion, it would be true."

It is needless to say that if counsel for the plaintiff were correct in his view of the law he was entitled to judgment, but since in my opinion the law is to the contrary, the *defendant* was entitled to judgment instead of the plaintiff. Motions for judgment on the pleadings are not very common in modern practice, but the rule has long been sanctioned that in the consideration of such a motion the court "will consider the whole record and give judgment for the party, who, on the whole, appears entitled to it." 49 C. J., 670.

Furthermore, in the consideration of appeals from magistrates' courts it is wisely provided in Section 804, Code 1942, that "the appellate court shall give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits". Applying this rule to all the phases of this appeal, I am of opinion

that the judgment of the magistrate should be reversed and the ejectment proceeding dismissed, upon the ground that the lease under which the defendant as tenant is in the occupation of the premises has not expired. *And it is so ordered.*