Leonard A. SNOWDEN, Appellant,

v.

Dean DAWDY, Respondent.

No. 23244.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Virgil Conkling, III, Kansas City, Sevier & Turnage, Liberty, for appellant.

James C. Davidson, Milton S. Broome, North Kansas City, for respondent.

BROADDUS, Judge.

This action was instituted in the Magistrate Court of Clay County by the plaintiff, Leonard Snowden, seeking possession of certain real estate. Judgment went against plaintiff in the Magistrate Court and he appealed to the Circuit Court and there again judgment was entered for the defendant. Plaintiff has perfected his appeal to this court.

The petition alleged that plaintiff and defendant entered into a lease for plaintiff's building located at 7206 North Oak Trafficway, Kansas City North. It was alleged the lease expired July 1, 1957, without being renewed, and that defendant stayed on thereafter as a tenant from month to month. Plaintiff then alleged the statutory termination of the tenancy and the refusal of defendant to relinquish possession. The prayer was for possession of the premises together with accrued rent. A copy of the lease was attached and is here set out:

"Store building at Linden, Missouri, owned by L. A. Snowden. This is an agreement between L. A. Snowden (lessor) and Dean Dawdy (lessee) for leasing building at Linden, Missouri. Mr. Dawdy agrees to pay $100.00 starting July 1, 1955, for the three offices on the south 18 feet of building until Mr. Ray Sapp vacates the north portion of building which will be approximately September or October of 1955, then Mr. Dawdy will rent whole building at $250.00 per month, except that part Mr. Ed. Anderton is renting now. This lease is for 2 years from July 1, 1955 to July 1, 1957, with an option for 5 more years after the 2 year period.

"(Signed) L. A. Snowden,
"(Signed) Dean Dawdy."

There is no dispute as to the facts in this case. Plaintiff and defendant entered into the written lease on July 1, 1955. The lease was drawn by the plaintiff. The premises described in the lease consisted of the south 18 feet and the center 36 feet of the building. On July 1, 1955, plaintiff rented the south 18 feet to defendant for $100 per month and in December, 1955, or January, 1956, the defendant took over the center portion and paid an additional $150 per month, making a total of $250 per month, as called for in the lease. On March 1, 1957, defendant surrendered the south 18 feet and the plaintiff accepted the same and the rent was reduced by $100, the amount specified in the lease for the south 18 feet of the premises. At this time defendant then paid only $150 per month for the center 36 feet of the premises. On July 1, 1957, the date which represents the end of the first two years, the defendant was occupying the center 36 feet and paying a rental of $150 per month. In November, 1958, plaintiff told defendant his rent would be increased $35 per month to compensate for an increase in plaintiff's insurance premiums. Defendant paid this amount, saying he did so to avoid any argument, but believing he was under his option for five years and really obligated to pay only $150 per month. Defendant did not give written notice of his intention to renew the lease on July 1, 1957. Plaintiff did not notify defendant that he was not under the lease, but continued to accept the rent and allowed defendant to remain in possession. On October 30, 1959, (twenty-eight months after the option date) plaintiff gave defendant notice to vacate the premises by December 1, 1959.

Plaintiff's basic contention is that by the undisputed evidence the plaintiff and defendant abandoned the written lease which we have set out above. He asserts that "it was the duty of the court to direct a verdict in plaintiff's favor because the evidence showed as a matter of law the abandonment of the written lease and the substitution therefor of an oral agreement. Since defendant wants to extend this oral agreement for more than a one-year period, it is in-

valid under the Statute of Frauds. Section 430.010, RSMo 1949."

■ As is to be seen, the written lease provides for a two year term "with an option for 5 more years after the 2 year period." No written notice of defendant's intention to extend the lease "for 5 more years" was required. There are numerous Missouri cases holding that the election to exercise an option by holding over and the payment of rent and acceptance by the landlord effects a renewal. Lewis v. Perry, 149 Mo. 257, 50 S.W. 821; Murphy v. Reed, Mo. App., 193 S.W.2d 947; Medicus v. Altman, 199 Mo.App. 466, 203 S.W. 637. In 32 Am.Jur. in the 1960 supplement thereto at page 96, it is stated: "practically all courts agree that under a provision for 'extension' of a lease the mere holding over by the lessee and the continued payment of rent will suffice to continue the relationship of landlord and tenant for the full period of the extended term stipulated for."

■ The fact that there was a surrender of a portion of the premises described in the written lease does not constitute an abandonment of the lease. In 51 C.J.S. Landlord and Tenant, § 129, p. 728, it is stated: "A surrender of a part of the leased premises does not terminate the lease as to the remainder."

This lease drawn by the plaintiff did not provide that the option was for the entire premises. It is clear that defendant in surrendering the south 18 feet had no intention to abandon the agreement insofar as his rights under the option were concerned. It is only logical to say that a person operating a cleaning business, as was defendant, would not build up a business for over a year and a half and, just when the business was becoming well established, sacrifice it—put himself in a position where he could be moved out on one month's notice.

Let us turn to the original lease. It described both the building and the parties to the agreement and the date when the lease started. The lease also treated the premises as two separate units, one unit being described in the lease as follows: "Mr. Dawdy agrees to pay $100.00 starting July 1, 1955, for the three offices on the south 18 feet of building * * *." The south 18 feet which contained the three offices, is the exact portion of the premises that was surrendered and accepted by the plaintiff lessor under this lease. The amount of the reduction in the rent was $100, the same figure that was provided in the original lease for this portion. The lease provided that the other unit was to come into possession of Mr. Dawdy at a later time and that the rental would then be an additional $150 for the center 36 feet, or a total of $250. March 1, 1957, the south 18 feet was surrendered and accepted and a rent reduction of $100 took place. On July 1, 1957, the date when renewal was effected, the defendant was under the original lease except for surrender of the south 18 feet and rental reduction of $100. At the time of the renewal the center 36 feet was being rented by defendant at $150 a month, and was the same rental for this portion as was originally provided in the lease.

Defendant is not relying upon an oral agreement. The rights he asserts are embodied in the written instrument. The cases cited by plaintiff are not in point.

The judgment is affirmed. All concur.